IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALIMA JAMILA HAYWARD,<br>　　　Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 23-CV-3234 |
| SOUTHWEST CREDIT SYSTEMS,<br>　　　Defendant. | :<br>:<br>: |

<u>MEMORANDUM</u>

BEETLESTONE, J.                                                                                     JANUARY 16TH, 2024

      Currently before the Court is an Amended Complaint filed by Plaintiff Kalima Jamila Hayward, a self-represented litigant, against Southwest Credit Systems ("Southwest") raising claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  For the following reasons, the Court will dismiss the Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

      In her initial Complaint, which was filed on August 18, 2023, Hayward alleged that upon "pulling [her] consumer report on August 7, 2023, she noticed various ways that [Southwest] [is] inaccurately reporting on [her] consumer report and violating [the FDCPA]." (Compl. at 4.)[1]  As a result, Hayward "notified" Southwest that she is "a victim of identity theft" and that she "did not authorize the account with the alleged debt." (*Id.*)  Hayward alleged that Southwest neglected her letter and a Federal Trade Commission complaint she mailed, and that Southwest reported information to consumer reporting agencies without her consent. (*Id.*)  According to

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Hayward, Southwest "state[ed] that they purchased the alleged debt from T MOBILE," which Hayward characterized as a violation of her "public information" because she was not afforded an opportunity to "opt out" of the transaction and did not "sign a document with [her] wet ink signature," which she claimed would be required for Southwest to obtain information about her. (*Id.*) Hayward characterized Southwest's actions as "misus[ing] [her] identity which is identity theft." (*Id.*)

In an August 31, 2023 Memorandum and Order, the Court granted Hayward leave to proceed *in forma pauperis* and dismissed her Complaint for failure to state a claim upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (ECF Nos. 5 & 6.) The Court concluded that: (1) to the extent Hayward cited the Gramm-Leach-Bliley Act as a basis for her claims, that Act does not support a private cause of action; (2) Hayward failed to state a claim under the FDCPA because she did "not clearly describe the nature of the consumer debt underlying her claims, she [did] not specifically allege that Southwest is a debt collector (although she indicates that Southwest purchased 'the alleged debt' from T MOBILE at some point), and she [did] not describe other than in conclusory terms how Southwest's acts or omissions violated a provision of the FDCPA"; and (3) Hayward failed to state a claim under the FCRA because she "failed to clearly identify the debt in question, clearly explain how it was inaccurately reported, and [did] not allege[] she reported the dispute to a credit reporting agency that notified Southwest of the dispute." *Hayward v. Sw. Credit Sys.*, No. 23-3234, 2023 WL 5651987, at *3-4 (E.D. Pa. Aug. 31, 2023). Hayward was given leave to file an amended complaint in the event she could provide additional factual details to cure the defects in her Complaint.

Hayward subsequently filed an Amended Complaint against Southwest. She again claims that on August 7, 2023, she "noticed in various ways how a debt collection company by

2

the name of Southwest Credit Systems were [sic] inaccurately furnishing on my consumer report and violating me under the [FDCPA] and violating me under the [FCRA]." (Am. Compl. at 5.) Hayward alleges that Southwest "furnishes that they purchased the alleged debt from T-Mobile" and asserts that she "did not do any business with the alleged debt collector." (*Id.*) Hayward further asserts that Southwest "obtained [her] non-public information without [her] consent" or "any prior notice" and claims to have filed a "dispute" with Southwest, Experian, Transunion and Equifax. (*Id.*) She claims that she did not "give [Southwest] authorization to furnish any non-public information" to consumer reporting agencies. (*Id.*) Hayward also asserts that Southwest failed to investigate the "dispute" and that the failure to provide valid documentation caused Experian to remove the "alleged debt collection" from her credit report. (*Id.*)

Hayward contends that the "consumer reporting agencies can attest and provide proof that [she] filed a dispute with them and that Southwest . . . reported negative information to them." (*Id.* at 3.) Hayward claims that the "inaccurate reporting" caused her to "lose important deals" and that she was denied a loan. (*Id.*) She further claims that her reputation was affected and that she had to take anti-depressants that made her drowsy. (*Id.*) Hayward seeks damages. (*Id.*) She attached several documents to her Amended Complaint as exhibits, including: (1) a credit report from Experian dated August 23, 2023 with a "personal statement" indicating that her name or identity "may have been used without [her] consent" and stating that credit should not be extended without contacting her personally, reflecting no entries from Southwest; (2) a similar credit report from Experian dated August 9, 2023 showing an entry from Southwest reflecting an "original creditor" of T-Mobile and a balance of $115 associated with the account; and (3) a letter dated August 7, 2023 from Hayward to Southwest, Experian, TransUnion, and Equifax, pertaining to the Southwest account #987539XX in the amount of $115 representing

3

that Hayward is the "victim of identity theft" because Southwest shared the account information with credit reporting companies without her consent, allegedly in violation of federal law.  (*Id.* at 8-12.)

## II.     STANDARD OF REVIEW

Since Hayward is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Hayward's Amended Complaint if it fails to state a claim. The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Hayward is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'"  *Id.*

4

### III. DISCUSSION[2]

#### A. FCRA Claims

Hayward has failed to state a claim under the FCRA. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))). In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

"[U]nder the FCRA, 15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (internal quotations omitted). To state a plausible claim under that provision of the FCRA against a furnisher of credit

---

[2] To the extent Hayward cites the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*, as a basis for her claims, that Act does not support a private cause of action so any claims she intended to bring under it are baseless. *See, e.g.*, *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) ("[I]t is well-recognized that the ["Gramm-Leach-Bliley Act] does not provide a private right of action to enforce its rules." (citing cases)); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, No. 10-5298, 2012 WL 1118194, at *5 (E.D.N.Y. Mar. 30, 2012) (same). Nor does 18 U.S.C. § 1039, also cited in the Amended Complaint, provide a private cause of action upon which Hayward can proceed. *See Dickson v. Mitta*, No. 22-437, 2022 WL 14015363, at *3 (N.D.N.Y. Oct. 24, 2022), *report and recommendation adopted sub nom. Dickson v. Abna*, 2022 WL 17403378 (N.D.N.Y. Dec. 1, 2022).

information, such as Southwest, Hayward must allege that she "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017); *see also* 15 U.S.C. § 1681s-2(b). "[T]here must be some threshold showing of inaccuracy to make a claim against a furnisher." *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 302 (E.D. Pa. 2021).

The Court understands the factual basis for Hayward's FCRA claim against Southwest to be that Southwest reported information to credit reporting agencies about the account it purchased from T-Mobile without Hayward's consent. Notably, Hayward does not allege that the T-Mobile account was not hers or that the information related to the T-Mobile account was inaccurate. Rather, she contends that she was the "victim of identity theft" because Southwest obtained her account information "without [her] consent" as set forth in her "dispute letter," and then furnished information about the account to credit reporting agencies without her authorization. (Am. Compl. at 5.) In the "dispute letter," which is attached as an exhibit to the Amended Complaint, Hayward inaccurately cites various provisions of federal law to suggest that Southwest stole her identity or violated reporting provisions because it furnished information about the T-Mobile account it purchased to credit reporting agencies without her consent. (*Id.* at 10 (stating that a financial institution may not disclose "any nonpublic personal information, unless such financial institution provides consumer with notice in writing clearly and conspicuously and the consumer is given the opportunity, before the time that such information

is initially disclosed, to direct that such information not be disclosed to such third party . . . ."); *id.* at 11 ("To date, I DID NOT give you PERMISSION to disclose my nonpublic information to any third parties, including, Experian.").)

Hayward misconstrues her rights under federal law. "The FCRA simply does not have a consumer 'opt out' provision." *Frazier v. Transunion*, No. 23-3637, 2023 WL 6323088, at *4 (E.D. Pa. Sept. 28, 2023). Although the FCRA protects consumers' privacy rights by dictating how furnishers must report information to consumer reporting agencies if they do so, *see* 15 U.S.C. § 1681s-2, it does not require furnishers of information to obtain consent from the consumer prior to sharing information with credit reporting agencies about accounts they have purchased. Nevertheless, this appears to be the basis upon which Hayward alleges that Southwest is either violating the FCRA or upon which she claims that the reported information is inaccurate. Accordingly, Hayward's FCRA claim fails because it is predicated upon a fundamental misunderstanding of the statute. *See Frazier*, 2023 WL 6323088, at *4 (finding plaintiff failed to allege an FCRA claim where he contended that furnisher and credit reporting agency "violated his rights because they have publicized private information without his consent" and that this "delinquent account information [should be] excluded from his credit file and/or consumer report based on his purported election to 'opt out' of the inclusion of this information").

  B.  **FDCPA Claims**

Hayward also has not stated a claim under the FDCPA. "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses.'"  *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692(e)).  "The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices."  *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors.").  Among other things, the FDCPA prevents debt collectors from engaging in harassing, oppressive or abusive conduct to collect a debt, § 1692d, making false, deceptive, or misleading representations in connection with debt collection, § 1692e, and using "unfair or unconscionable means" to collect a debt, § 1692f.  To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted).

A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  "Debt" for purposes of the FDCPA is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  *Id.* § 1692a(5).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

Assuming that Southwest is a debt collector for purposes of the FDCPA, Hayward has failed to describe how Southwest's acts or omissions violated a provision of the FDCPA. Many of her allegations simply parrot statutory language and are therefore insufficient on their face to support a claim. *See Shareef v. Consumer Portfolio Servs. Inc.*, No. 21-CV-4039, 2021 WL 5823011, at *3 (E.D. Pa. Dec. 7, 2021) ("Citing to the statute and repeating the language contained in the law is insufficient to state a claim without a description of what actions . . . [the debt collector] took to give rise to the claim against it."); *see also Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that FDCPA claim was pled based on "conclusory and speculative statements that cannot survive a motion to dismiss"); *Astarita v. Solomon & Solomon, PC*, No. 12-5670, 2013 WL 1694807, at *2 (D.N.J. Apr. 18, 2013) ("Plaintiff's Complaint is utterly devoid of any factual content - such as the specific debt which Defendant attempted to collect on, or details about the dates, times, and manner of the communications Defendant made to Plaintiff in attempting to collect on that unspecified debt - which would allow the Court to draw the reasonable inference that Defendant's actions violated any provision of the FDCPA."). It is possible that Hayward is attempting to assert claims under 15 U.S.C. § 1692e(8), which prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Yet the factual basis for this claim appears to be Hayward's belief that Southwest could not report information about an account it purchased to consumer reporting agencies without her consent, which is based on a misunderstanding of federal law. That

9

Southwest failed to obtain Hayward's consent prior to either purchasing the account or reporting the account information to a consumer reporting agency does not make the debt "false" or, on its own, violate the FDCPA.

Hayward also appears to be alleging that Southwest violated § 1692g(b) of the FDCPA. (Am. Compl. at 3.)  Relevant here, § 1692g(a) of the FDCPA requires a debt collector to send a notice with certain information about the debt "[w]ithin five days after the initial communication with a consumer in connection with the collection of [that] debt" unless that information is already contained in the initial communication.  15 U.S.C. § 1692g(a); *see also Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 62 (3d Cir. 2015) ("Section 1692g(a) explicitly identifies the information that a debt collector must include in a debt collection letter, such as the amount of the debt, the name of the creditor to whom the debt is owed, and the procedures available to the consumer should he dispute the validity of the debt.").  "Section 1692g(a) further requires that the written notice inform the debtor that, if she 'notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt' and mail it to the debtor."  *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *1 (3d Cir. Apr. 18, 2023) (quoting 15 U.S.C. § 1692g(a)(4)).  "Section 1692g(b) guarantees that, if a consumer invokes her § 1692g(a) right to request information about a debt, and the consumer invokes this right in writing and within the thirty-day period prescribed by statute, a debt collector must 'cease collection of the debt' until it has provided the requested information to the debtor."  *Id.*

Hayward's allegation that Southwest did not "validate a notice and disclosure . . . to give [her] the opportunity [to] opt out of the furnishing and to validate [her] claim that she did not authorize the alleged debt prior to the furnishing to third part consumer reporting agencies,"

10

(Am. Compl. at 5), does not support a plausible violation of section 1692g(b).  The Amended Complaint does not allege any information about an initial communication from Southwest, claim that Hayward submitted her dispute letter in the appropriate time period under the statute, or describe any efforts that Southwest has made to collect upon the debt in question.  Accordingly, Hayward has not alleged a violation of section 1692g(b).  *See Tauro v. Asset Acceptance*, No. 12-00418, 2012 WL 2359954, at *3 (W.D. Pa. June 20, 2012) (dismissing claim as implausible because "[t]he Plaintiff does not allege that, nor does he aver facts to suggest that, the Defendants provided (or failed to provide) either an initial communication or validation notice containing the information required by law.  In order to state a valid FDCPA claim, the Plaintiff must do so."); *Valderrama v. BBVA Compass*, No. 21-CV-01776, 2021 WL 6065825, at *3 (N.D. Tex. Nov. 22, 2021), *report and recommendation adopted*, No. 21-01776, 2021 WL 6063618 (N.D. Tex. Dec. 21, 2021) (dismissing FDCPA claim where "Plaintiff also fails to assert any facts indicating that he properly disputed or sought validation of the debt, or that he has been the object of any collection activity by Defendants.").

### IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Hayward's Amended Complaint.  Hayward will not be given further leave to amend because the Court concludes that amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).   An appropriate Order follows, which dismisses this case.

BY THE COURT:

/S/WENDY BEETLESTONE, J.

**WENDY BEETLESTONE, J.**